**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

**BRIANNA ZAPATA**, individually;

    Plaintiff;

v.

**COLORADO CHRISTIAN UNIVERSITY;**

**JOANNIE DeBRITO**, individually and in her official capacity as Director of Counseling at Colorado Christian University;

**SHARON FELKER**, individually and in her official capacity as Dean of Student Life at Colorado Christian University;

    Defendant(s).

**COMPLAINT WITH JURY DEMAND**

Plaintiff, Brianna Zapata, who appears individually, hereby respectfully files this action against Defendants Colorado Christian University ("CCU"), Donald W. Sweeting, Joannie DeBrito, Sharon Felker and Jim McCormick, through the undersigned counsel of record, Igor Raykin of Kishinevsky & Raykin, Attorneys at Law, and states on information and belief as follows.

Table of Contents

*I.     NATURE OF THE CASE ................................................................................................1*
*II.    JURISDICTION AND VENUE .....................................................................................1*
*III.   BACKGROUND FACTS ...............................................................................................2*
*IV.    CLAIMS AND CAUSES OF ACTION .........................................................................5*
   A.   FIRST CLAIM FOR RELIEF  (*VIOLATION OF SECTION 504 OF THE REHABILITATION ACT*) ........................................................................................5*
   B.   SECOND CLAIM FOR RELIEF  (*VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT*) ...............................................................................7*
   C.   THIRD CLAIM FOR RELIEF  (*VIOLATION OF THE COLORADO ANTI-DISCRIMINATION ACT*) ........................................................................................8*
   D.   FOURTH CLAIM FOR RELIEF  (*BREACH OF CONTRACT*) ........................................9*
*V.    DAMAGES ....................................................................................................................10*
*VI.   REQUEST FOR RELIEF .............................................................................................11*

## I.     NATURE OF THE CASE

This action seeks redress for violations of, and seeking redress under, federal law, including but limited to 29 U.S.C. § 794 and 42 U.S.C. § 12182, for discriminatory conduct in a postsecondary education setting, as well as under Colorado law-based claims, including but not limited to breach of contract, stemming from CCU's failure to accommodate Plaintiff's disability, removal of Plaintiff from campus, harassment of Plaintiff, and forcing Plaintiff to withdraw from CCU on account of Plaintiff's disability. Additionally, claims in this matter exist under the Colorado Anti-Discrimination Act.

## II.     JURISDICTION AND VENUE

1. Plaintiff Brianna Zapata is a resident of Orange County, California.

2. Defendant Colorado Christian University (herein "CCU" or "university") is a private university located in Lakewood, Colorado.

3. Based on information and belief, all of the individual Defendants are Colorado residents.

4. The wrongful acts alleged by the Plaintiff occurred in whole or in part in Jefferson County, Colorado.

5. The court has jurisdiction over this action pursuant to: 28 U.S.C. § 1331 based on federal question claims described below including but not limited to 29 U.S.C. § 794 and 42 U.S.C. § 12182; 28 U.S.C. § 1367 for supplemental jurisdiction over state-based claims including but not limited to breach of contract and violation of the Colorado Anti-Discrimination Act; and 28 U.S.C. § 1332 because of the complete diversity of residences,

citizenship, and domicile between the plaintiff and the defendants in this action and amount in controversy exceeding $75,000 per plaintiff, not including interest and costs.

6. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b), subsections 1 and 2, based on Defendants' residences and/or a substantial part of the events or omissions giving rise to Plaintiff's claims occurring in Jefferson County, Colorado.

### III.   BACKGROUND FACTS

7. CCU is a private university located in Lakewood, Colorado, and offers both undergraduate and graduate degrees.

8. Based on information and belief, CCU receives federal financial assistance, such as through the U.S. Department of Education.

9. Plaintiff started at CCU in August of 2016. She transferred from Northwestern Christian College in Iowa, and the adjustment was difficult for her. As a result, after the transfer, she went to CCU's counseling center to seek help with anxiety and depression she was have during her time at CCU.

10. On October 3, 2016, Plaintiff met with CCU therapist Anna Arzu ("Ms. Arzu."). During the meeting with Plaintiff, Ms. Arzu asked her if she was having any suicidal thoughts, and Plaintiff indicated that sometimes she would have such thoughts. Ms. Arzu then contacted the Jefferson Center for Mental Health ("JCMH").

11. A couple of representatives from JCMH came out to speak to Plaintiff, and then she was taken to the Lutheran Medical Center ("Lutheran") in Wheat Ridge, Colorado. Lutheran ran a series of tests on her, and then she was transferred to West Pines ("West Pines")

for a psychological evaluation. Plaintiff would spend the evenings of October 3 and October 4 at West Pines.

12. On October 4, Dr. Amber Lynn Johnson ("Dr. Johnson") evaluated Plaintiff and released her on October 5. Dr. Johnson indicated that Plaintiff was not a threat to herself nor anyone else. Plaintiff certainly never directed any type of threats toward anyone, and CCU has not claimed that any such threats were ever made. Plaintiff also had not engaged in any type of aggressive behaviors toward anyone. Dr. Johnson increased the dosage of Prozac that Plaintiff was already taking due to a previous diagnosis of depression that Plaintiff had received. Dr. Johnson told Plaintiff's parents that the best thing for Plaintiff would be for her to return to CCU and resume her studies.

13. After her release from Dr. Johnson's care on October 5, Plaintiff was eager to return to CCU and contacted her residence advisor to ask if she could pick her up from West Pines and return her to school. Plaintiff made it very clear that she wanted to resume regular programming at CCU. The residence advisor instead told her that CCU's Director of Counseling, Joannie DeBrito ("Ms. DeBrito"), needed to speak with Plaintiff.

14. Ms. DeBrito informed Plaintiff over the phone that she was not welcome back at CCU. Plaintiff pleaded with Ms. DeBrito to allow her to resume her studies at CCU. Ms. DeBrito specifically told Plaintiff, "You cannot come back to CCU."

15. Plaintiff, whose family was in California, had nowhere to go, and she had to stay at West Pines in order to have a place to stay. Plaintiff contacted her parents to inform them of what Ms. DeBrito had told her.

16. Plaintiff's mother contacted Ms. DeBrito. Ms. DeBrito told Plaintiff's mother that she had met with Ms. Felker and others and decided that Brianna was not a good fit for CCU and was not to return to CCU. When asked why, DeBrito refused to respond to Plaintiff's mother and told her that they had made a decision that Plaintiff was not to return to CCU. Plaintiff's mother informed DeBrito that Plaintiff had nowhere to go, since she had no family or friends in Colorado. DeBrito told Plaintiff's mother that Plaintiff could return to CCU to pack her things and be picked up within 24 hours. Plaintiff's mother told DeBrito that was not possible because they lived in California. DeBrito gave Plaintiff's mother 72 hours to pick up Plaintiff. Plaintiff's mother told DeBrito that Plaintiff had no means to return to CCU, since her car, keys, purse and wallet were at CCU. Ms. DeBrito sent a cab after Plaintiff and contacted her to inform her that she was to go straight to the Resident Director, Joshua Woods ("Mr. Woods"), to make arrangements to enter her dorm room to pack, then to the CCU office to sign a hardship withdrawal form that had been prefilled by the faculty and required by Ms. DeBrito to be signed. When Plaintiff arrived at the office, she found a pre-filled hardship withdrawal form waiting for her signature. Intimidated by Ms. DeBrito and not in a right frame of mind after the whirlwind of activity in the prior days, Plaintiff was coerced into signing the form under duress. Additionally, CCU and DeBrito were taking advantage of Plaintiff's fragile mental state at the time, thereby discriminating against her disability.

17. Plaintiff's parents began the drive from California to Colorado to pick up Plaintiff after her forced withdrawal from CCU.

18. Plaintiff's parents sought answers for Plaintiff's expulsion from CCU and contacted the Dean of Student Life, Sharon Felker ("Ms. Felker") for answers. Ms. Felker told them that

4

the reason Plaintiff could not return was due to "observed behaviors," although she refused to identify those behaviors to the Plaintiff's parent or to the Plaintiff when requested by both the Plaintiff's parents and the Plaintiff. Again, at this point there was no evidence that Plaintiff was a threat to herself or anyone else. Additionally, CCU certainly was well-aware of Plaintiff depression disability.

19. On November 14, the Plaintiff's father spoke with Jim McCormick ("Mr. McCormick"), the Vice President of Student Life and Enrollment at CCU. Mr. McCormick admitted that Ms. DeBrito had misled him regarding the circumstances of Plaintiff's removal from CCU, and that, in fact, Ms. DeBrito had admitted to him that she told Plaintiff and Plaintiff's mother that Plaintiff could not return to CCU and instructed her to sign the withdrawal form and leave campus.

20. Plaintiff and her family have repeatedly sought additional information and documentation from CCU, but CCU has been unwilling to provide it. On December 15, 2016, a formal request under the Family Educational Rights and Privacy Act was filed with CCU, but CCU has only provided Plaintiff's transcript and nothing else, in violation of federal law.

21. All of the Defendants have discriminated against Plaintiff by removing her from CCU based exclusively on her documented disability.

### IV.   CLAIMS AND CAUSES OF ACTION

#### A.   FIRST CLAIM FOR RELIEF
(*VIOLATION OF SECTION 504 OF THE REHABILITATION ACT*)

22. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

23. Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and its implementing regulations apply to recipients of federal financial assistance from the Department of Education. *See* 34 C.F.R. § 104.2

24. Among other things, Section 504 requires that:

> A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same states.

34 C.F.R. § 104.4(b)(4).

25. With regards to postsecondary educational entities, 34 C.F.R. § 104.43 prohibits universities receiving federal funds from excluding, discriminating against, or otherwise denying benefits to qualified students on the basis of their handicap.

26. Moreover, any such university must "make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student." 34 C.F.R. § 104.44(a).

27. Education institutions have a "real obligation… to seek suitable means of reasonably accommodating a handicapped person *and to submit a factual record indicating that it conscientiously carried out this obligation.*" *Wong v. Regents of the Univ. of California*, 192 F.3d 807, 817 (1999) (quoting *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1048 (9th Cir. 1999) and *Wynne v. Tufts Univ. Sch. of Med.,* 932 F.2d 19, 25–26 (1st Cir. 1991) (en banc))

28. Plaintiff was and is qualified to attend CCU.

29. Defendant CCU intentionally excluded Plaintiff, intentionally discriminated against her, was deliberately indifferent to her rights, intentionally harassed her and intentionally denied her benefits solely on the basis of her disability when CCU forced Plaintiff to withdraw on October 5, 2016.

30. At no time did Defendant CCU seek suitable means of accommodating Plaintiff, and CCU failed to conscientiously carry out its obligation of providing her with a reasonable accommodation.

31. Defendant CCU's violation of Plaintiff's rights under Section 504 caused Plaintiff to suffer damages, including but not limited to psychological, emotional, and reputational damages in addition to economic damages and the loss of educational and career opportunities and attorney fees and costs in this action.

### B. SECOND CLAIM FOR RELIEF
### (*VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT*)

32. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

33. Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, prohibits any place of public accommodation from denying an individual the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity on the basis of their disability.

34. Under Title III of the ADA, places of public accommodation explicitly include "…undergraduate, or postgraduate private school, or other place of education." 42 U.S.C. § 12181(7)(J).

35. 42 U.S.C. § 12182(2)(A) specifically states that discrimination includes:

a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

36. By intentionally harassing Plaintiff and forcing her to withdraw, Defendant CCU denied Plaintiff the opportunity to participate in or benefit from its goods, services, facilities, privileges, advantages, and/or accommodations on the basis of her disability.

37. Defendant CCU failed to make reasonable modifications to its policies, practices, and/or procedures, when such modifications were necessary to afford such goods, services, facilities, privileges, advantages, and/or accommodations to Plaintiff.

38. Defendant CCU has not and cannot demonstrate that making such modifications would fundamentally alter the nature of its goods, services, facilities, privileges, advantages, and/or accommodations.

39. Defendant CCU's violation of Plaintiff's rights under Title III of the ADA caused Plaintiff to suffer damages, including but not limited to psychological, emotional, and reputational damages in addition to economic damages and the loss of educational and career opportunities and attorney fees and costs in this action.

### C. THIRD CLAIM FOR RELIEF
### (VIOLATION OF THE COLORADO ANTI-DISCRIMINATION ACT)

40. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

41. The Colorado Anti-Discrimination Act ("CADA") prohibits discrimination on the basis of disability in places of public accommodation. *See* C.R.S.A. § 24-34-601 et. seq.

42. Under C.R.S.A. § 24-34-601(1), a "place of public accommodation" specifically includes "an educational institution".

43. Prohibited discrimination under C.R.S.A. § 24-34-601(2)(a) includes directly or indirectly refusing, withholding from, or denying an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations on the basis of their disability.

44. By intentionally harassing Plaintiff and forcing her to withdraw, Defendant CCU and the individual defendants withheld from and denied Plaintiff the full and equal enjoyment of CCU's goods, services, facilities, privileges, advantages, and/or accommodations on the basis of her disability.

45. Defendant CCU's and the individual defendants' violation of Plaintiff's rights under CADA caused Plaintiff to suffer damages, including but not limited to psychological, emotional, and reputational damages in addition to economic damages and the loss of educational and career opportunities and attorney fees and costs in this action.

### D. FOURTH CLAIM FOR RELIEF
### (*BREACH OF CONTRACT*)

46. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

47. Plaintiff had a valid, enforceable contract with Defendant CCU. Upon enrollment, the contract created enforceable obligations upon both Plaintiff and Defendant CCU.

48. The contract contemplates that Defendant CCU would provide Plaintiff with educational services sufficient to allow her the opportunity of obtaining a degree.

49.     Plaintiff substantially performed and/or complied with the contract by attending CCU and remitting payments as required. To the extent that Plaintiff did not perform, her performance was excused because her performance was hindered by Defendant CCU.

50.     Defendant CCU failed to perform substantially its express obligations under the contract to provide Plaintiff with sufficient educational services to allow her the opportunity of obtaining a degree.

51.     Defendant CCU breached the contract in a willful and wanton manner. Such breaches include but are not limited to requiring Plaintiff to withdraw from CCU.

52.     The breach of the contract directly and proximately caused Plaintiff to suffer damages, including but not limited to psychological, emotional, and reputational damages in addition to economic damages and the loss of educational and career opportunities and attorney fees and costs in this action.

## V.     DAMAGES

53.     The Defendant's discriminatory and illegal conduct described above has caused the Plaintiff the following damages:

a. Lost future wages, and benefits in amounts to be established at trial;

b. Lost tuition;

c. Emotional upset, stress, and anxiety in an amount to be established at trial;

d. Out of pocket expenses, litigation costs, and attorney fees in amounts to be established at trial.

e.

## VI.     REQUEST FOR RELIEF

Plaintiff requests that the court enter judgment in her favor and against Defendants as follows:

54.     Awarding Plaintiff special damages for lost future wages, benefits, and out of pocket expenses in amounts to be established at trail;

55.     Awarding Plaintiff general damages for emotional distress in an amount to be established at trial;

56.     Awarding civil penalties as authorized under 28 C.F.R. § 36.504;

57.     Awarding fines as authorized under C.R.S.A. § 24-34-602(1)(a) and C.R.S.A. § 24-34-802;

58.     Awarding Plaintiff statutory and reasonable attorney fees, litigation expenses, and costs incurred in this action under 29 U.S.C. § 794a, 28 C.F.R. § 36.505 and C.R.S.A. § 24-34-802;

59.     Awarding Plaintiff punitive damages as authorized by law;

60.     Awarding Plaintiff prejudgment interest on her lost wages award and economic loss; and

61.     Awarding Plaintiff any additional and further relief that the court finds equitable, appropriate, or just.

DATED: October 3, 2018

s/ Igor Raykin
Igor Raykin, Esq., Atty. Reg. #: 43081
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 748-8888

11

E-mail: igor@coloradolawteam.com
Attorney for Plaintiff


s/ Ian Griffin
Ian Griffin, Esq., Atty. Reg. #: 48782
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 748-8888
E-mail: ian@coloradolawteam.com
Attorney for Plaintiff

12