IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-02529-CMA-NYW

BRIANNA ZAPATA,

    Plaintiff,

v.

COLORADO CHRISTIAN UNIVERSITY,
JOANNIE DEBRITO, individually and in her official capacity as Director of Counseling at Colorado Christian University, and
SHARON FELKER, individually and in her official capacity as Dean of Student Life at Colorado Christian University,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on the Motion for Summary Judgment (Doc. # 54) filed by Defendants Colorado Christian University ("CCU"), Joannie DeBrito, and Sharon Felker. Plaintiff Brianna Zapata filed a Response on November 22, 2019 (Doc. # 58), and Defendants filed a Reply on December 6, 2019 (Doc. # 59). For the reasons described herein, the Court grants Defendants' Motion.

## I.     BACKGROUND

Ms. Zapata filed this action on October 3, 2018, claiming that CCU violated Section 504 of the Rehabilitation Act and Title III of the Americans with Disabilities Act ("ADA"). (Doc. # 1.) Ms. Zapata claims that CCU discriminated against her by failing to provide adequate accommodations for her disability[1] prior to her withdrawal. (*Id.* at ¶ 29,

---

[1] In their briefs, the parties acknowledge that Ms. Zapata's alleged disability is depression.

¶¶ 36–37.) Additionally, Ms. Zapata asserts a claim for breach of contract against CCU for allegedly breaching an agreement between the parties.[2] (*Id.* at ¶ 50.) The following facts are undisputed.

Ms. Zapata transferred to CCU in or about August 2016 after attending Northwestern Christian College in Iowa. (Doc. # 58 at 1.) At some point following her arrival at CCU, Ms. Zapata expressed discontent with CCU and a desire to leave.[3] (Doc. # 55 at Ex. 1.) She told a resident advisor that she would be staying at CCU only temporarily and that she wanted to return to Northwestern Christian College. (*Id.*) On September 19, 2016, Ms. Zapata sought counseling with an intern counselor at CCU. She visited the counselor on two subsequent occasions, September 26, 2016, and October 3, 2016. (*Id.* at 5–10 (counseling session notes).) During the September 26, 2016 visit, Ms. Zapata mentioned to the counselor that she was not going to classes and expected to fail. (*Id.* at 7.) During her third visit with the counselor, on October 3, 2016, Ms. Zapata described having suicidal thoughts and plans. (*Id.*) The counselor contacted the Jefferson Center for Mental Health's Colorado Crisis Services ("CCS") to have Ms. Zapata evaluated. (*Id.*) A CCS counselor spoke with Ms. Zapata and explained possible options, including going to a hospital. (*Id.*) Ms. Zapata elected to be taken to a hospital where she was placed on a 72-hour hold for assistance with depression and for her own safety. (Doc. # 54 at 4.)

---

[2] Ms. Zapata's Complaint also included a claim for relief under the Colorado Anti-Discrimination Act. On April 9, 2019, this claim was dismissed with prejudice for failure to exhaust administrative remedies prior to bringing suit. (Doc. # 36.)

[3] The parties dispute as to when Ms. Zapata became discontented with CCU. Defendants claim she was unhappy upon arrival while Ms. Zapata asserts to the contrary. However, resolution of this disputed fact is not necessary to determine whether summary judgment is appropriate in this matter.

On October 5, 2016, Ms. Zapata was released prior to the completion of her 72-hour hold. (Doc. # 55 at 19.) On the day of her discharge, Ms. Zapata communicated by phone with Dr. Joannie DeBrito, CCU's Director of Counseling. (Doc. # 54-1 at 104.) During their conversation, Dr. DeBrito informed Ms. Zapata that she would be unable to return to campus at that time. (*Id.*) On that same day, following her conversation with Dr. DeBrito, Ms. Zapata signed CCU's Hardship/Medical Withdrawal form. (Doc. # 54-1 at 117.) Additionally, Sharon Felker, Dean of Student Life at CCU, sent an email to Ms. Zapata in which she outlined the options available to Ms. Zapata. (Doc. # 54-1 at 34.) In the email, Dean Felker also acknowledged that she was aware that Ms. Zapata had completed the Hardship/Medical Withdrawal form and indicated that Dean Felker had "put a hold on that as I want to make sure you have made your decision freely." (*Id.*) In her deposition, Dean Felker testified that she sent this email to ensure that Ms. Zapata understood her options and that Ms. Zapata's signing of the Hardship/Medical Withdrawal form was voluntary. (*Id.* at 39.) However, Ms. Zapata did not respond to the email, and on October 10, 2016, CCU granted Ms. Zapata's request for withdrawal, refunded her tuition, and reimbursed her boarding expenses on a pro-rated basis. (*Id.* at 115.) Defendants subsequently filed the instant Motion for Summary Judgment. (Doc. # 54.)

## II. LEGAL STANDARDS

### A. SUMMARY JUDGMENT

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper

disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 118 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court may not resolve issues of credibility and must view the evidence in the light most favorable to the nonmoving party—including all reasonable inferences from that evidence. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant need simply point the court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific

4

exhibits incorporated therein." *Id*. Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## B.  THE REHABLITATION ACT AND THE ADA

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a). Similarly, under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

In the context of higher education, the Tenth Circuit interprets and treats the two statutes in a similar way. *Doe v. Okla. City Univ.*, 406 F. App'x 248, 250–51 (10th Cir. 2010). A plaintiff bringing a claim under either statute is required to show that (1) he or she is disabled and otherwise qualified academically; (2) the defendant is a private entity that owns, leases or operates a place of public accommodation (for ADA purposes) and receives federal funding (for Rehabilitation Act purposes); and (3) the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation. *Id.*; *see also Colo. Cross-Disability Coal v. Women's Health Care*

5

*Assocs., P.C.*, No. 10-cv-01568-RPM, 2010 WL 4318845, at *2 (D. Colo. Oct. 25, 2010) (setting forth similar elements of a claim under Title III of the ADA).

## III. ANALYSIS

In the instant case, Ms. Zapata claims that CCU violated Section 504 of the Rehabilitation Act and Title III of the ADA by denying her an accommodation or modification in light of her disability. The Court reviews these claims and determines that Ms. Zapata did not initiate a request for accommodation or modification. Additionally, because Ms. Zapata and CCU mutually rescinded the contract when Ms. Zapata withdrew from the University, she fails to satisfy her claim for breach of contract.

**A.  REQUESTING ACCOMMODATION UNDER THE REHABILITATION ACT AND THE ADA**

Ms. Zapata claims that, pursuant to Section 504 of the Rehabilitation Act and Title III of the ADA, CCU never provided proper accommodations or modifications for her documented disability. (Doc # 1 at 6–7.) For purposes of the Court's analysis, it is accepted that CCU is a place of public accommodation which receives federal funds, satisfying that element of the claim. (Doc. # 1 at ¶ 34, ¶ 8.) As outlined above, the Tenth Circuit requires Ms. Zapata to show that Defendants failed to make reasonable modifications that would accommodate Ms. Zapata's disability without fundamentally altering the nature of the public accommodation. *Okla. City Univ.*, 406 F. App'x at 250–51. However, the Tenth Circuit also recognizes that in cases where a plaintiff is claiming a denial of accommodation, the burden lies with the plaintiff to request such accommodation. *Wells v. Shalala*, 228 F.3d 1137, 1145 (10th Cir. 2000) ("Plaintiff bore the initial burden of establishing an interactive process . . . by proposing an accommodation and showing that the accommodation was objectively reasonable.");

6

see also *Woodman v. Runyon*, 132 F.3d 1330, 1344 (10th Cir. 2000) (stating that the initial burden is on an employee to suggest a "plausible accommodation").

Ms. Zapata fails to provide evidence to show that she requested any accommodation from CCU.[4] In Ms. Zapata's deposition, she stated that she did not recall ever requesting an accommodation, but if she did, it would have been in a confidential counseling session with a CCU counselor. (Doc. # 54-1 at 11.) However, the CCU confidential counselor's notes (Doc. # 55 at 5–10) (detailing sessions on September 19, 2016, September 26, 2016, and October 3, 2016) make no mention of Ms. Zapata requesting any service or accommodation. Furthermore, Ms. Felker's email to Ms. Zapata (Doc. # 54-1 at 39), following her signing the Hardship/Medical Withdrawal Form, presented an additional opportunity for Ms. Zapata to make such a request and she failed to do so.

Furthermore, in her Response to Defendants' Motion for Summary Judgment, Ms. Zapata does not dispute CCU's assertion that she failed to establish a failure to accommodate on behalf of CCU. (Doc. # 58 at 4–10.) Pursuant to Federal Rule of Civil Procedure 56(e), when a party fails to address a fact, the court may consider the fact undisputed or grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to summary judgment. Fed. R. Civ. P. 56(e); *see Perez v. El Tequila, LLC*, No. 12-CV-588-JED-PJC, 2015 WL 4173541, at *3 (N.D. Okla. July 10, 2015) ("With respect to legal arguments specifically, a district court may grant summary judgment as to issues raised by a movant but not addressed or rebutted by a nonmovant."), *aff'd*, 847 F.3d 1247 (10th Cir.

---

[4] Defendants provide numerous examples of services and resources that are offered to students seeking an accommodation. *See* (Doc. # 54-1 at 42–104.)

2017); see also *Coffey v. Healthtrust Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992) (holding that a nonmovant's failure to rebut the arguments raised on summary judgment, was fatal to an attempt to raise and rebut such arguments on appeal).

Although Ms. Zapata failed to respond to Defendants' argument, the Court must still determine that summary judgment is appropriate by weighing the legal consequences of the accepted facts. Fed. R. Civ. P. 56(e)(3) advisory committee's note to 2010 amendment. After reviewing the evidence upon which CCU relies, the Court determines that there is no dispute of fact regarding Ms. Zapata's failure to request an accommodation or modification. Ms. Zapata has presented no evidence indicating that she ever asked the CCU counselor for an educational accommodation nor did she reply to Ms. Felker's email and request an accommodation or modification.

As a result, there is no genuine dispute of material fact that CCU denied a modification or accommodation to Ms. Zapata. Because Ms. Zapata has failed to satisfy this required element of her claim that CCU violated Section 504 of the Rehabilitation Act and Title III of the ADA, the Court need not address Ms. Zapata's remaining arguments pertaining to academic qualification and exclusion based on her disability. *See Okla. City Univ.*, 406 F. App'x at 250–51 (noting three elements that must be met to establish a claim under § 504 of the Rehabilitation Act and Title III of the ADA). Accordingly, Ms. Zapata's Rehabilitation Act and ADA claims fail as a matter of law.

**B.     BREACH OF CONTRACT CLAIM**

Ms. Zapata contends that upon her enrollment at CCU, a contract was created that would provide Ms. Zapata with educational services sufficient to allow her the

opportunity of obtaining a degree.[5] (Doc. # 1 at ¶ 48.) The basic relationship between a student and educational institution is contractual in nature. *CenCor, Inc. v. Tolman*, 868 P.2d 396, 398 (Colo. 1994). CCU provided Ms. Zapata with an offer upon admission to their institution.[6] She subsequently accepted and agreed to pay tuition,[7] creating consideration for which she would receive a degree upon completing the University's academic credit requirements. Thus, for purposes of Ms. Zapata's breach of contract claim, the Court recognizes that Ms. Zapata and CCU had an executory contract. *See Mission Prod. Holdings, Inc., v. Tempnology, LLC*, 139 S. Ct 1652, 1657 (2019) (explaining that a contract is executory if performance remains due to some extent on both sides).[8]

Defendants assert that they are entitled to summary judgment on Ms. Zapata's claim for breach of contract. (Doc. # 54 at 20.) Ms. Zapata failed to respond to this argument. As such, the Court reviews the facts provided by the moving party to determine whether summary judgment is appropriate. To establish a claim for breach of contract under Colorado law, a plaintiff must show (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to

---

[5] The Court construes Ms. Zapata's Complaint in the light most favorable to her and determines that the breach of contract claim refers to "educational services" other than those accommodations for which CCU is legally obligated to provide but that Ms. Zapata failed to request.
[6] *See* (Doc. # 1 at 4, ¶ 9 (noting that Ms. Zapata enrolled in August of 2016 as a transfer student)).
[7] The Court infers that tuition was paid on the basis that the undisputed facts show that CCU reimbursed Ms. Zapata's tuition. (Doc. # 54-1 at 117 (referring to a one hundred percent tuition reimbursement); Doc # 54-1 at 112 (email showing Mr. Zapata's (Plaintiff's father) was expecting the reimbursement); Doc. # 54-1 at 115 (DOE report indicating that the University provided a tuition reimbursement).)
[8] Although the Supreme Court defined "executory contract" in the bankruptcy context of construing what types of contracts constitute "executory contracts" for purposes of applying 11 U.S.C. § 365(a), the Court concludes that the definition is still applicable to executory contracts in general.

perform the contract by the defendant; and (4) resulting damages to the plaintiff. *PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)). However, upon the agreement of both parties, an established contract can be mutually rescinded. *Randall v. Carroll*, 488 P.2d 250, 252 (Colo. 1971) ("Mutual rescission requires assent to that rescission by both parties obligated under the contract."); *see also* 29 Williston on Contracts § 73.15 (4th ed.) (noting that mutual rescission requires that both parties agree to mutually release one another from their respective obligations under the contract).

The undisputed facts in this case demonstrate that there was mutual rescission concerning that contract. "To rescind by agreement, the agreement must be mutual, and by all the necessary parties to the original contract. Such rescission must be with the clear knowledge and understanding of the parties." *W. Air Lines v. Hollenbeck*, 235 P.2d 792, 797 (Colo. 1951). When Ms. Zapata signed the Hardship/Medical Withdrawal form provided by CCU, effectively expressing her assent to no longer be enrolled at CCU, and CCU accepted her request to withdraw and refunded her tuition, Ms. Zapata and CCU mutually agreed to rescind their contract. (Doc. # 54-1 at 117.) The email sent by Dean Felker (*id.* at 34) allowed an opportunity for Ms. Zapata to reconsider her request to withdraw and provided her with other options. Ms. Zapata had clear knowledge of her options, yet she did not withdraw her request to withdraw, i.e., she consented to the rescission of her contract with CCU. The Court need not review the additional elements required to establish a breach of contract claim, as mutual rescission releases both

parties from their respective obligations. Therefore, because both parties mutually rescinded their contract, Ms. Zapata's breach of contract claim fails as a matter of law.

## IV.     CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

1.     Defendants Colorado Christian University, Joannie DeBrito, and Sharon Felker's Motion for Summary Judgment (Doc. # 54) is GRANTED.

2.     The Clerk of the Court respectfully is directed to enter judgment in favor of Defendants Colorado Christian University, Joannie DeBrito, and Sharon Felker and against Plaintiff Brianna Zapata.

3.     The Final Trial Preparation Conference set for April 29, 2020, and the four-day Jury Trial set to commence on May 11, 2020, are VACATED.

DATED: February 26, 2020

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
United States District Judge